1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   JAMIE M. CANTRELL,                        No.  2:24-CV-0567-DMC

12                    Plaintiff,

13         v.                                   MEMORANDUM OPINION AND ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                     Defendant.
16

17

18          Plaintiff, who is proceeding pro se,[1] brings this action for judicial review of a final

19   decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).  Pursuant to the

20   written consent of all parties, ECF Nos. 7 and 8, this case is before the undersigned as the

21   presiding judge for all purposes, including entry of final judgment.  See 28 U.S.C. § 636(c).

22   Pending before the Court are the parties' briefs on the merits, ECF Nos. 11 and 12.

23          The Court reviews the Commissioner's final decision to determine whether it is:

24   (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

25   whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

26   more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

27   _____

28   [1]      The Court's prior order incorrectly reflected that Plaintiff is proceeding with
     retained counsel.

1

1    (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

2    a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

3    including both the evidence that supports and detracts from the Commissioner's conclusion, must

4    be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

5    v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's

6    decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

7    Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

8    findings, or if there is conflicting evidence supporting a particular finding, the finding of the

9    Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

10   Therefore, where the evidence is susceptible to more than one rational interpretation, one of

11   which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

12   Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

13   standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

14   Cir. 1988).

15            For the reasons discussed below, the Commissioner's final decision is affirmed.

16

17                        **I.  THE DISABILITY EVALUATION PROCESS**

18            To achieve uniformity of decisions, the Commissioner employs a five-step

19   sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§

20   404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

21            Step 1        Determination whether the claimant is engaged in
22                          substantial gainful activity; if so, the claimant is presumed
                            not disabled and the claim is denied;

23            Step 2        If the claimant is not engaged in substantial gainful activity,
24                          determination whether the claimant has a severe
                            impairment; if not, the claimant is presumed not disabled
25                          and the claim is denied;

26            Step 3        If the claimant has one or more severe impairments,
                            determination whether any such severe impairment meets
27                          or medically equals an impairment listed in the regulations;
                            if the claimant has such an impairment, the claimant is
28                          presumed disabled and the claim is granted;

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989).  The claimant has the initial burden of proving the existence of a disability.  See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work.  See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).  If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy.  See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

3

1

## II.  THE COMMISSIONER'S FINDINGS

2          Plaintiff applied for social security benefits in July 2015.  See CAR 213, 222.[2]  In

3    the application, Plaintiff claims disability began on January 1, 2014.  See id.  Plaintiff's claim was

4    initially denied.  Following denial of reconsideration, Plaintiff requested an administrative

5    hearing, after which Administrative Law Judge (ALJ) Carol A. Eckersen issued a decision on

6    May 31, 2018, finding Plaintiff not disabled.  See id. at 16-29.  The Appeals Council denied

7    review and, with the assistance of retained counsel, Plaintiff appealed.  On February 13, 2020, the

8    undersigned remanded the matter pursuant to the parties' stipulation.  See id. at 1107-08.

9    Pursuant to the Court's remand, the Appeals Council assigned the matter to ALJ Eckerson for

10   further proceedings.  See id. at 1111-14.

11         A second hearing was held before the ALJ on November 19, 2020.[3]  See id. at

12   960.  In a January 27, 2021, decision, the ALJ concluded Plaintiff is not disabled based on the

13   following relevant findings:

14         1.    The claimant has the following severe impairment(s): cervical,
                 thoracic and lumbar degenerative disc disease, status post L5-S1
15               decompression and fusion, status post C5-6 decompression and
                 fusion, sacroiliac joint dysfunction, mood disorder, and anxiety
16               disorder;

17         2.    The claimant does not have an impairment or combination of
                 impairments that meets or medically equals an impairment listed in
18               the regulations;

19         3.    The claimant has the residual functional capacity to perform light
                 work except as follows: the claimant can frequently climb ramps
20               and stairs and occasionally climb ladders, ropes or scaffolds. She
                 can frequently balance, stoop, kneel, crouch and crawl; she is
21               capable of simple repetitive tasks; she is able to maintain
                 concentration, persistence and pace and adapt to changes
22               consistent with simple repetitive can have occasional interaction
                 with supervisors and co-workers;
23

24         / / /

25         / / /

26    _____

27         [2]    Citations are to the Certified Administrative Record (CAR) lodged on April 23,
      2024, ECF No. 10.
            [3]    At the second administrative hearing, Plaintiff was assisted by non-attorney
28    representative Glenn A. Skinner.  See CAR 960.

1

2

4.       Considering the claimant's age, education, work experience,
         residual functional capacity, and vocational expert testimony, there
         are jobs that exist in significant numbers in the national economy
         that the claimant can perform.

3

See id. at 963-75.

4

5

After the Appeals Council declined further review, Plaintiff filed this second appeal pro se.

6

7

**III. DISCUSSION**

8

In her opening brief, Plaintiff recounts her medical history and limitations and

9

argues generally that the ALJ's January 27, 2021, determinations relating to her ability to work

10

are incorrect.  See generally ECF No. 11.  In support of her position, Plaintiff attaches various

11

medical records to her brief.  Given Plaintiff's pro se status, the Court has reviewed the ALJ's

12

decision through each step of the sequential analysis.

13

At the outset, the Court addresses the medical records attached to Plaintiff's brief.

14

Defendant provides the following summary of the attached documents, which Plaintiff does not

15

dispute:

16

17

18

19

20

21

22

23

24

25

26

27

28

The relevant period in this case was from the date Plaintiff alleged
disability, January 1, 2014, through the date of the ALJ's decision,
January 27, 2021. . . . The letter from Dr. Ketchum dated February 5,
2024, is well outside the relevant period and states Plaintiff is
"functionally disabled," but provides no specific functional limitations.
See Doc. 11, page 14. . . . The statement from Plaintiff's mother, Abbie
Cantrell, is also dated well after the relevant period. Doc. 11, page 25. Ms.
Cantrell's statement reiterates statements made by Plaintiff and evaluated
by the ALJ. The emergency department notes from December 2023 are
also outside the relevant period and relate to complaints of breathing
problems with normal objective findings. The diagnosis was acute anxiety
and Plaintiff was advised to stop smoking. Doc. 11, pages 36-44. . . .
       With regard to the one record that was from the relevant period and
not included in the record, Plaintiff has not established good cause for not
including the evidence in the record before the ALJ. . . . Plaintiff has not
explained why the x-ray of her feet from October 21, 2021, was not
included in the records before the ALJ. As Plaintiff points out, the x-rays
show pes planus, also known as flatfeet. Doc. 11, page 23. . . . The
remainder of the evidence attached to her brief was already part of the
administrative record. The prescriptions for crutches and a cane attached
to her brief are already in the record (AR 1062-63). The operative report
from February 2019 is also already in the record (AR 1494). Additionally,
the ALJ specifically cited the record in the decision (AR 969). Similarly,
the operative notes from August 2015 are included in the record (AR 676),
and the ALJ discussed Plaintiff's August 2015 surgery (AR 968). Though

5

1   it is dated after the relevant period, the lumbar MRI from January 2022 is
2   also already in the record (AR 1065). . . .

    CAR 12, pgs. 15-16.

3

4       A case may be remanded to the agency for the consideration of new evidence if

5   the evidence is material and good cause exists for the absence of the evidence from the prior

6   record.  See Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 511-12 (9th Cir.

7   1987) (citing 42 U.S.C. § 405(g)).  In order for new evidence to be "material," the Court must

8   find that, had the agency considered this evidence, the decision might have been different.  See

9   Clem v. Sullivan, 894 F.2d 328, 332 (9th Cir. 1990).  The Court need only find a reasonable

10  possibility that the new evidence would have changed the outcome of the case.  See Booz v.

11  Secretary of Health and Human Services, 734 F.2d 1378, 1380-81 (9th Cir. 1984).  The new

12  evidence, however, must be probative of the claimant's condition as it existed at or before the

13  time of the disability hearing.  See Sanchez 812 F.2d at 511 (citing 42 U.S.C. § 416(i)(2)(G)).  In

14  Sanchez, the court concluded that the new evidence in question was not material because it

15  indicated "at most, mental deterioration after the hearing, which would be material to a new

16  application, but not probative of his condition at the hearing."  Id. at 512 (citing Ward v.

17  Schweiker, 686 F.2d 762, 765-66 (9th Cir. 1982)).

18      The Court finds that a remand is not warranted based on the records attached to

19  Plaintiff's brief.  First, as to the letter from Dr. Ketchum, the statement from Plaintiff's mother,

20  and emergency department notes, these records are all dated after the relevant time period (from

21  the alleged onset date of January 1, 2014, through the date of the hearing decision of January 27,

22  2021).  These records are, therefore, not probative.  See Sanchez 812 F.2d at 511; see also

23  Blansette v. Berryhill, 721 F.App'x 715, 717 (9th Cir. 2018).  Second, as to the October 2021 x-

24  ray of Plaintiff's foot, Plaintiff has not established good cause by way of providing any

25  explanation for its absence from the record.  To establish good cause, the plaintiff must explain

26  why the evidence was not available earlier.  See Mayes v. Massanari, 276 F.3d 453, 463 (9th Cir.

27  2001).  Plaintiff has not done so here.  Finally, as Defendant notes, the remainder of the records

28  attached to Plaintiff's brief are already included in the record before the ALJ and this Court.

1    The Court next addresses the ALJ's analysis throughout the five-step sequential

2    evaluation process.

3    **A.    Steps 1-3**

4    At Step 1, the ALJ determined that Plaintiff was not engaged in substantial gainful

5    activity since the alleged onset date of January 1, 2014.  See CAR 963.  At Step 2, the ALJ

6    determined that Plaintiff has the following severe impairments: cervical, thoracic and lumbar

7    degenerative disc disease, status post L5-S1 decompression and fusion, status post C5-6

8    decompression and fusion, sacroiliac joint dysfunction, mood disorder and anxiety disorder.  See

9    id.  At Step 3, the ALJ found that Plaintiff's impairments, singly or in combination, do not meet

10    or medically equal an impairment or impairments listed in the regulations.  See id. at 964.

11    These determinations are not in dispute.

12    **B.    Step 4 – Residual Functional Capacity**

13    Residual functional capacity is the most a person "can still do despite [the

14    individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2012); see also Valencia v.

15    Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current

16    "physical and mental capabilities").  Thus, residual functional capacity describes a person's

17    exertional capabilities in light of his or her limitations.[4]  An ALJ's RFC finding must include all

18    of the limitations the ALJ has found to be supported by the evidence of record.  See SSR 85-15.

19    / / /

20    / / /

21

22    [4]    Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work.  See 20 C.F.R., Part 404, Subpart

23    P, Appendix 2, § 200.00(a).  "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  See 20

24    C.F.R. §§ 404.1567(a) and 416.967(a).  "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  See 20 C.F.R. §§

25    404.1567(b) and 416.967(b).  "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  See 20 C.F.R. §§

26    404.1567(c) and 416.967(c).  "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  See 20 C.F.R. §§

27    404.1567(d) and 416.967(d).  "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.  See 20

28    C.F.R. §§ 404.1567(e) and 416.967(e).

1      In determining residual functional capacity, the ALJ must assess what the plaintiff

2 can still do in light of both physical and mental limitations.  See 20 C.F.R. §§ 404.1545(a),

3 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual

4 functional capacity reflects current "physical and mental capabilities").  Where, as here, there is a

5 colorable claim of mental impairment, the regulations require the ALJ to follow a special

6 procedure.  See 20 C.F.R. §§ 404.1520a(a), 416.920a(a).  The ALJ is required to record pertinent

7 findings and rate the degree of functional loss.  See 20 C.F.R. §§ 404.1520a(b), 416.920a(b).

8      In determining Plaintiff's residual functional capacity at Step 4, the ALJ

9 considered the following evidence of record: (1) Plaintiff's subjective statements and testimony;

10 (2) the objective medical evidence; (3) the opinion evidence; and (4) statements from Janice R.

11 Nickell as well as statements from Steven Cantrell, Plaintiff's father.  See CAR 966-73.  Upon

12 consideration of this evidence, the ALJ determined that Plaintiff has the residual functional

13 capacity to perform light work with the limitations outlined above.  See id.

14      1.      Objective Evidence and Plaintiff's Subjective Statements and Testimony

15      The Commissioner determines the weight to be given to a claimant's own

16 statements and testimony, and the court defers to the Commissioner's discretion if the

17 Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94

18 F.3d 520, 522 (9th Cir. 1996).  An explicit finding must be supported by specific, cogent reasons.

19 See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.

20 See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify

21 what testimony is not afforded weight and what evidence undermines the testimony.  See id.

22 Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's

23 reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also

24 Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue,

25 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

26 / / /

27 / / /

28 / / /

1    If there is objective medical evidence of an underlying impairment, the

2 Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

3 because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

4 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> 5    The claimant need not produce objective medical evidence of the
> [symptom] itself, or the severity thereof.  Nor must the claimant produce
> 6    objective medical evidence of the causal relationship between the
> medically determinable impairment and the symptom.  By requiring that
> 7    the medical impairment "could reasonably be expected to produce" pain or
> another symptom, the Cotton test requires only that the causal relationship
> 8    be a reasonable inference, not a medically proven phenomenon.

> 9    80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
> Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

10

11    The Commissioner may, however, consider the nature of the symptoms alleged,

12 including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

13 947 F.2d at 345-47.  In weighing a claimant's statements and testimony, the Commissioner may

14 also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other

15 inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to

16 follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and

17 (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See

18 Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

19 claimant cooperated during physical examinations or provided conflicting statements concerning

20 drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

21 claimant testifies as to symptoms greater than would normally be produced by a given

22 impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

23 Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

24    Regarding reliance on a claimant's daily activities to discount testimony of

25 disabling pain, the Social Security Act does not require that disability claimants be utterly

26 incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has

27 repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . .

28 does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v.

1    Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th

2    Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a

3    claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic

4    restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the

5    claimant was entitled to benefits based on constant leg and back pain despite the claimant's

6    ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home

7    activities are not easily transferable to what may be the more grueling environment of the

8    workplace, where it might be impossible to periodically rest or take medication").   Daily

9    activities must be such that they show that the claimant is ". . .able to spend a substantial part of

10   his day engaged in pursuits involving the performance of physical functions that are transferable

11   to a work setting." Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard

12   before relying on daily activities to discount a claimant's pain testimony.  See Burch v. Barnhart,

13   400 F.3d 676, 681 (9th Cir. 2005).

14          At Step 4, the ALJ considered Plaintiff's subjective statements and testimony as

15   part of determining Plaintiff's residual functional capacity.  See CAR 967-71.  The ALJ

16   summarized Plaintiff's testimony and statements as follows:

17          The claimant alleges an inability to work due to her mental and
            psychological symptoms (Ex. 2E). The claimant reported that her back
18          pain has been present all of her life and that her pain is a burning stabbing
            shooting pain that goes from her lower buttocks to the middle of her back
19          and then starts in her neck again as an ache (Ex. 7E). In addition, the
            claimant reported that she has to lay down to relieve her neck pain (Id.).
20          Moreover, the claimant reported that when she walks she takes short baby
            steps and that she feels unstable (Id.). Furthermore, the claimant reported
21          pain in bending over to clean herself and that she has difficulty laying
            down in the bathtub (Hearing Testimony). The claimant also reported that
22          due to her back pain she takes her time getting dressed (Hearing
            Testimony). While the claimant reported that she puts her shirt on slowly
23          due to her neck and lower back, she also reported that she is able pull her
            shirt over her head (Hearing Testimony). In addition, the claimant reported
24          that she is only able to sit for five to ten minutes before needing to adjust
            her position and she can stand for five to twenty minutes before having to
25          take a break. Moreover, the claimant reported that walking for twenty
            minutes results in two days of recovery (Id.). Recently, the claimant
26          testified that she is more limited than previously reported. The claimant

27   / / /

28   / / /

10

1
2

estimated she is able to sit or stand only 10 minutes. She stated she is severely limited by mental and physical impairments (Hearing Testimony).

3

CAR 967.

4

The ALJ first concluded that the "objective findings in this case fail to provide

5

strong support for the claimant's allegations of disabling symptoms and limitations." Id. The

6

ALJ then summarized the objective evidence of record. See id. at 967-69. This summary is not

7

repeated here. The ALJ also considered Plaintiff's activities of daily living as noted in

8

documentation from June 3, 2020, incident to an examination for eligibility for in-home support

9

services. See id. at 970. Specifically, the ALJ noted:

10
11
12
13

On June 3, 2020, the claimant was examined for in home support services. Complaints included difficulty with activities of daily living. The claimant noted that she was able to care for her 6-year-old child, including preparing meals, helping with feeding and cleaning her home (Ex. 28F/14). An examination revealed decreased sensory testing, but normal motor examination. Physicians indicated the claimant qualified for services (Ex. 28F/16).

14

CAR 970.

15

The ALJ reached the following conclusions regarding Plaintiff's subjective

16

statements and testimony:

17
18
19
20

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

21
22
23
24
25
26
27
28

While the claimant alleged that she could only lift five pounds of weight, she also reported that she could lift and carry her forty-pound child (Ex. 7E; 7F/44). The examiner noted that the claimant was able to do four deep knee squats to lift the child, complete a forward bend without using her knees to lift the child, and she was able to hold the child and rotate him from hip to hip several times (Id.). The claimant admitted that she was able to care for her 6-year-old child, including preparing meals, helping with feeding and cleaning her home (Ex. 28F/14). As such, the claimant demonstrated that she could perform postural movements. While the claimant reported that it takes two days to recover after walking for twenty minutes, she has also informed her medical provider that she would like to start jogging again (Ex. 8F/37). In addition, while the claimant presented an antalgic gait (Ex. 22F/134, 136), the majority of her examinations found a normal gait and five out five muscle strength (Ex. 3F/2, 5, 11; 6F/4; 7F/45, 48, 51, 57, 60, 63, 66, 69, 81, 90; 8F/2, 5,8, 11, 39, 44, 47, 49; 10F/2; 15F/8, 11, 13, 16, 19, 22, 25, 28, 21F/4, 8, 16). In 2019,

11

postsurgical records showed the claimant was feeling "really good." An examination showed 5/5 bilateral lower extremity strength and no back pain with motion. Physicians discharged the claimant from therapy, and found she had met all goals (Ex. 26F/69).

The claimant reported experiencing chronic pain due to her medical impairments and she has also reported that her prescription of Gabapentin has helped her symptoms such that she was able to quite using marijuana for pain relief (Hearing Testimony).

The claimant has some limitation from her mental impairments though her mental impairments do not limit her more than the above residual functional capacity. The claimant has been found to be alert and oriented to person, place, and time (Ex. 3F/2, 5, 11; 6F/3; 7F/2, 5,8, 11, 14, 17, 26, 35, 38, 41, 42, 69, 90; 8F/14, 20, 26, 29, 35, 43; 13F/2; 28F/12, 24, 31, 38, 46). Moreover, the claimant's examiners have found her to have normal thought and perception (Ex. 7F/5, 20, 29; 28F/50, 57, 61). The claimant's medical providers have found her to be cooperative (Ex. 6F/3; 8F/43; 13F/2; 21F/4, 15) and to have appropriate mood and affect (Ex. 28F/46, 50, 54, 61). Moreover, the claimant's medical providers evaluated her memory to be normal (Ex. 14F/2, 5, 8, 11, 14, 17, 20; 21F/13, 137; 28F/57). The claimant was able to perform serial threes and she was able to spell "world" forwards and backwards with one error (Ex. 13F).

CAR 970-71.

Here, the ALJ properly considered Plaintiff's statements and testimony in the context of the objective medical evidence. As the ALJ noted, most evaluations found that Plaintiff's gait and muscle strength were normal. In 2019, Plaintiff reported that she was feeling "really good" and examination at that time showed normal bilateral lower extremity strength and no back pain with motion. Plaintiff was discharged from physical therapy upon completing all her goals. As to Plaintiff's complaints of chronic pain, the objective evidence indicates that Plaintiff reported that prescription medical was helping and that she was able to stop using marijuana for pain relief. As to mental limitations, the objective findings show that Plaintiff has been consistently found to be alert and oriented; she has demonstrated normal thought and perception; Plaintiff has been found to be cooperative with appropriate mood and affect; and Plaintiff's memory has been found to be normal. The ALJ allowed for mental limitations by restricting Plaintiff to simple repetitive tasks with only occasional interaction with co-workers and supervisors. The Court finds that the ALJ's assessment, that Plaintiff's testimony and statements are inconsistent with the objective evidence, is supported by the record.

///

The ALJ did not consider the objective evidence as the only factor guiding the analysis of Plaintiff's subjective statements and testimony. The ALJ also considered Plaintiff's activities of daily living. In doing so, the ALJ cited Exhibits 7E, 7F, 8F, and 28F. See CAR 970. Notably, the ALJ identified an inconsistency in Plaintiff's statements. In a function report completed on March 16, 2016, Plaintiff stated that she could only lift five pounds. See CAR 285 (Exhibit 7E). However, at a December 10, 2014, visit with her treating medical provider, which Plaintiff attended with her minor son who weighed 40 pounds at the time, Plaintiff stated that she is consistently lifting him, holding him, and fastening him in the car seat. See CAR 458 (Exhibit 7f, pg. 44). During the examination, Plaintiff was able to perform deep-knee squats to pick up her son. See id. Plaintiff was also able to lift her son using forward bends without using her knees. See id. When Plaintiff's son cried, Plaintiff was observed holding him and rotating him from hip to hip several times. See id. In June 2020, Plaintiff was seen at the Shasta Community Health Center and reported that she was able to care for her six-year-old son. See CAR 1544 (Exhibit 28F, pg. 14).

While Plaintiff states that activities of daily living are somewhat limited due to chronic back pain and such activities may not necessarily show an ability to perform competitive work on a full-time basis, the ALJ nonetheless appropriately noted inconsistencies in Plaintiff's statements, specifically regarding care of her child. Such inconsistencies provided a legal basis supported by substantial evidence for the ALJ's conclusion regarding Plaintiff's statements and testimony as a whole. See Smolen, 80 F.3d at 1284. Because the ALJ provided a valid rationale for discounting Plaintiff's subjective statements and testimony, and because the rationale is supported by evidence in the record, the Court finds no error with respect to the ALJ's analysis of Plaintiff's subjective statements and testimony.

2.    Opinion Evidence

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical

1    opinion over another.  See id.

2            Under the regulations, only "licensed physicians and certain qualified specialists"

3    are considered acceptable medical sources.  20 C.F.R. § 404.1513(a); see also Molina v. Astrue,

4    674 F.3d 1104, 1111 (9th Cir. 2012).  Where the acceptable medical source opinion is based on

5    an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it

6    rests on his own independent examination of the claimant."  Tonapetyan v. Halter, 242 F.3d 1144,

7    1149 (9th Cir. 2001).  The opinions of non-examining professionals may also constitute

8    substantial evidence when the opinions are consistent with independent clinical findings or other

9    evidence in the record.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Social

10   workers are not considered an acceptable medical source.  See Turner v. Comm'r of Soc. Sec.

11   Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants

12   also are not acceptable medical sources.  See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016).

13   Opinions from "other sources" such as nurse practitioners, physician assistants, and social

14   workers may be discounted provided the ALJ provides reasons germane to each source for doing

15   so.  See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874

16   F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance

17   when opinions from "other sources" may be considered acceptable medical opinions).

18           For all claims, as here, filed before March 27, 2017, ALJs are bound by

19   regulations and case law requiring ALJs to give physicians' opinions different weights, depending

20   on the relationship between the physician and the claimant.  See 20 C.F.R §§ 404.1527(c) &

21   416.920(c); Garrison v. Colvin, 759 F.3d 995, 1017-18 (9th Cir. 2014).  This rule is known as the

22   treating physician rule.  The weight given to medical opinions depends in part on whether they

23   are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81

24   F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

25   professional, who has a greater opportunity to know and observe the patient as an individual, than

26   the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th

27   Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the

28   opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th

1  Cir. 1990).

2            In addition to considering its source, to evaluate whether the Commissioner

3  properly rejected a medical opinion in a claim filed before March 27, 2017, the Court considers

4  whether: (1) contradictory opinions are in the record; and (2) clinical findings support the

5  opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining

6  medical professional only for "clear and convincing" reasons supported by substantial evidence in

7  the record.  See Lester, 81 F.3d at 831.  While a treating professional's opinion generally is

8  accorded superior weight, if it is contradicted by an examining professional's opinion which is

9  supported by different independent clinical findings, the Commissioner may resolve the conflict.

10  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

11            A contradicted opinion of a treating or examining professional may be rejected

12  only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d

13  at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the

14  facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

15  finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

16  legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

17  professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

18  without other evidence, is insufficient to reject the opinion of a treating or examining

19  professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

20  conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

21  1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see

22  also Magallanes, 881 F.2d at 751.

23            The ALJ considered various medical opinions of record at Step 4 in determining

24  Plaintiff's residual functional capacity.  See CAR 971-73.  Specifically, the ALJ discussed

25  opinions from the following sources: (1) psychiatric consultative examiner Chester Sunde,

26  Psy.D.; (2) state agency medical consultant K. Rowlands, M.D.; (3) state agency medical

27  consultant G. Lee, M.D.; (4) state agency medical consultant L. Colsky, M.D.; (5) and testifying

28  medical expert Alfred Jonas, M.D.  See id.  The ALJ gave "great weight" to the opinions of Drs.

Sunde and Jonas regarding Plaintiff's mental and physical limitations and formulated the residual

functional capacity finding around these opinions.  See id.  Notably, as to Plaintiff's mental

impairments, Dr. Jonas applied the special procedure required under the regulations (the

"paragraph B" criteria) to record pertinent findings and rate the degree of functional loss.  See id.

at 972-73.

The ALJ, however, gave only "some weight" to the other doctors' opinions.  See

id.  As to Drs. Rowlands and Lee, the ALJ rejected the doctors' opinion that Plaintiff can only sit

or stand for two hours in an eight-hour day.  See id.  As to Dr. Colsky, the ALJ rejected the

doctor's opinion that Plaintiff could have no public contact.  See id.  The Court focuses the

remainder of the discussion regarding medical opinions on those opinions which were not

accepted to determine if the ALJ provided legally sufficient reasons for doing so, and whether

those reasons are supported by substantial evidence.

i.      Drs. Rowlands and Lee

As to Drs. Rowlands and Lee, the ALJ stated:

> At the request of the agency, state agency medical consultant K.
> Rowlands, M.D., opined that the claimant could perform work at less than
> the light exertional level in that the claimant could sit for two hours out of
> an eight-hour day (Ex. 1A; 2A). Dr. Rowlands also opined that the
> claimant could occasionally climb ladders, ropes, scaffolds, balance, and
> stoop, kneel, crouch, or crawl (Id.). In addition, state agency medical
> consultant G. Lee, M.D., opined that the claimant could perform work at
> less than the light exertional level in that the claimant could stand for two
> hours out of an eight-hour day (Ex. 5A; 6A). Dr. Lee also opined that the
> claimant could frequently climb ramps, stairs, or balance (Id.). In addition,
> Dr. Lee opined that the claimant could occasionally climb ladders, ropes,
> or scaffolds, stoop, kneel, crouch, or crawl (Id.). I assign some weight to
> the opinions of Dr. Rowland and Dr. Lee. While Dr. Rowland and Dr. Lee
> as state agency medical consultants possess advanced knowledge of
> agency rules and regulations, the opinions that the claimant could sit for
> two hours out of an eight-hour day or stand for two hours out of an eight-
> hour day are not supported by the record. Specifically, while the claimant
> presented an antalgic gait (Ex. 22F/134, 136), the majority of her
> examinations found a normal gait and five out five muscle strength (Ex.
> 3F/2, 5, 11; 6F/4; 7F/45, 48, 51, 57, 60, 63, 66, 69, 81, 90; 8F/2, 5,8, 11,
> 39, 44, 47, 49; 10F/2; 15F/8, 11, 13, 16, 19, 22, 25, 28, 21F/4, 8, 16).
> Moreover, the claimant's medical examiners noted that the claimant was
> able to do four deep knee squats to lift her child, complete a forward bend
> without using her knees to lift her child, and she was able to hold the child
> and rotate him from hip to hip several times (Ex. 7F/44).

CAR 972.

16

As non-examining professionals, and consistent with the former regulations which govern this case, the ALJ appropriately gave the opinions of Drs. Rowland and Lee less weight than the opinions of examining professionals.  Additionally, the ALJ provided a valid reason for doing so, citing inconsistency between the doctors' opinions and the objective medical evidence.  On this record, the Court cannot find any error in the ALJ's assessment of the opinions of Drs. Rowland or Lee.

### ii.   Dr. Colsky

As to Dr. Colsky, the ALJ stated:

> The state agency medical consultant L. Colsky, M.D., opined that the claimant is functional in her activities of daily living and she is able to interact with others in a satisfactory manner (Ex. 5A; 6A). Dr. Colsky opined that the claimant has the capacity to maintain concentration, persistence and pace to complete one to two step tasks over the course of a typical eight-workday five days a week (Id.). Dr. Colsky also opined that the claimant is not expected to decompensate in a minimally stressful work environment (Id.). Dr. Colsky recommended that due to depression, she should avoid contact with the general public (Id.). I assign some weight to the opinions of Dr. Colsky. Dr. Colsky, as a state agency medical consultant, possesses advanced knowledge of agency rules and regulations and the record supports that the claimant is capable of occasional superficial interaction with the public and frequent interaction with co-workers or supervisors. I have considered that the claimant's medical providers have noted that the claimant has become hostile and yelled at her medical staff (Ex. 21F/10; 15F/9, 33, 34, 35). I assign great weight to the rest of Dr. Colksy's opinion as the record supports it. Specifically, the claimant was able to perform serial threes and she was able to spell "world" forwards and backwards with one error (Ex. 13F). In addition, the claimant reported that she is able to care for her children who live with her (Ex. 5E). Moreover, the claimant reported that part of her normal routine was to ensure that her children brushed their teeth and that they were dressed for bed (Id.). Furthermore, the claimant reported that she is able to plan meals for the week and that she ensures that her meal plan prevents food from expiring (Hearing Testimony).

ECF No. 972.

As with Drs. Rowland and Lee, Dr. Colsky is a non-examining professional and, under the applicable regulations, the ALJ appropriately gave the doctor's opinions less weight than was given to those of examining professionals.  Moreover, the ALJ cited evidence of record in support of the conclusion that Plaintiff is not as socially limited as opined by Dr. Colsky in terms of dealing with the general public in a work setting.  Specifically, while Dr. Colsky recommended no public interaction due to Plaintiff's depression, the ALJ cited evidence of record

1    from Dr. Sunde, who examined Plaintiff, indicating that Plaintiff has less-than-severe impairment

2    in her ability to interact with supervisors, co-workers, and the public.  Under the applicable

3    regulations, the ALJ appropriately gave more weight to the opinion of Dr. Sunde, who examined

4    Plaintiff and less weight to the opinion of Dr. Colsky, who did not.  See Lester, 81 F.3d at 830-

5    31; Smolen, 80 F.3d at 1285; Winans, 853 F.2d at 647; Pitzer, 908 F.2d at 506 & n.4.

6                      3.    Lay Witness Evidence

7              In addition to the objective evidence, Plaintiff's subjective statements and

8    testimony, and the opinion evidence, the ALJ also considered third-party statements from Mr.

9    Cantrell and Ms. Nickell.  See CAR 973.  The ALJ's evaluation of each is discussed below.

10             In determining whether a claimant is disabled, an ALJ generally must consider

11   third-party lay witness testimony concerning a claimant's ability to work.  See Dodrill v. Shalala,

12   12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).

13   Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work

14   is competent evidence . . . and therefore cannot be disregarded without comment."  See Nguyen v.

15   Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).  Consequently, for disability claims filed, as here,

16   before March 27, 2017,[5] "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must

17   give reasons that are germane to each witness."  Dodrill, 12 F.3d at 919.  When rejecting third

18   party statements which are similar in nature to the statements of plaintiff, the ALJ may cite the

19   same reasons used by the ALJ in rejecting the plaintiff's statement.  See Valentine v.

20   Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a

21   third-party family member's testimony, which was similar to the claimant's, for the same reasons

22

23             [5]    **Error! Main Document Only.**The new regulatory framework, which applies to
     claims filed after March 27, 2017, identifies five categories of evidence: (1) objective evidence;
24   (2) medical opinions; (3) "other" medical evidence; (4) evidence from nonmedical sources; and
     (5) prior administrative medical findings. 20 C.F.R. § 416.913(a)(1)–(5). With respect to evidence
25   from nonmedical sources—the category under which lay testimony falls—the revised regulations
     expressly provide that the agency is "not required to articulate how we considered evidence from
26   nonmedical sources using the requirements [set forth] in paragraphs (a) through (c) in this
     section." 20 C.F.R. § 416.920c(d). Thus, the revised regulations distinguish between evidence the
27   ALJ is required to "consider" and evidence that requires the ALJ to "articulate" how the evidence
     was considered.  Based on a plain reading of the revised regulations, the new regulatory
28   framework requires an ALJ to *consider* lay testimony but does not necessarily require the ALJ to
     articulate *how* it was considered.

                                          18

1    given for rejection of the claimant's complaints).

2          As to statements from Mr. Cantrell and Ms. Nickell, the ALJ stated:

3          Steven J. Cantrell, the claimant's father submitted a third party statement
           dated March 18, 2016 (Ex. 8E). He corroborated the claimant's allegations
           that she can lift up to five pounds and that the claimant has difficulty

4          squatting, bending, standing, reaching, kneeling, climbing stairs, using
           hands, and completing tasks (Id.). While Mr. Cantrell's statements may be

5          sincere and well meaning, rephrasing or reassertion of the claimant's own
           allegation, in a different format is not a basis for a finding of disability.

6          For the same reasons I find the claimant's allegations of disability are not
           consistent with the record, so too are the allegations made by Mr. Cantrell

7          given little weight. I acknowledge the medical record demonstrates the
           claimant does have some physical and mental workplace limitations.

8          Accordingly, I have accounted for these limitations in the above residual
           functional capacity.

9

10         Janice R. Nickell, completed a statement received August 31, 2020. She
           indicated that she assisted the claimant with completion of her application

11         due to an inability to sit, write or stand (due to back pain) (Ex. 16E). I give
           this opinion little weight. It is ambiguous, fails to provide specific

12         limitations and fails to provide objective evidence to substantiate the
           allegations. Further, it is inconsistent with objective evidence, including

13         the claimant's own admissions that she is capable of caring for her
           children (Ex. 28F/14).

14         CAR 973.

15         The Court finds no error in the ALJ's analysis of the lay witness statements in this

16    case.  Under the regulations governing this case, the ALJ was required to provide reasons

17    germane to each lay witness for discounting third-party evidence.  The ALJ did so here.  As to

18    both witnesses, the ALJ appropriately noted that his statements were largely the same as those

19    provided by Plaintiff and were discounted for the same reasons (discussed above).  See Valentine,

20    574 F.3d at 694.  As to Ms. Nickell in particular, the additionally ALJ noted that the statement

21    was ambiguous and failed to provide much by way of specific detail.

22         C.    **Step 5 – Vocational Assessment**

23         The Medical-Vocational Guidelines (Grids) provide a uniform conclusion about

24    disability for various combinations of age, education, previous work experience, and residual

25    functional capacity.  The Grids allow the Commissioner to streamline the administrative process

26    and encourage uniform treatment of claims based on the number of jobs in the national economy

27    for any given category of residual functioning capacity.  See Heckler v. Campbell, 461 U.S. 458,

28    460-62 (1983) (discussing creation and purpose of the Grids).

                                                    19

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations.  See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983).  Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sulliacvan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)).  The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities.  See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under Step 5 of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically, where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony.  See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant.  See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole.  See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th

20

1     Cir. 1988).

2             For Social Security benefits hearings, the Dictionary of Occupational Titles (DOT)

3     is the default presumption for disability classifications.  Massachi v. Astrue (9th Cir. 2007) 486

4     F.3d 1149, 1150.  Moreover, the ALJ has an affirmative responsibility to ask about any possible

5     conflict between vocational expert evidence and information provided in the DOT.  Id.  The ALJ

6     may, however, rebut the presumption of applicability of the DOT when expert testimony exists

7     that is supported by persuasive evidence contradicting the DOT.  See Murry v. Apfel, 1999 U.S.

8     App. LEXIS 28911, 1, 9 (9th Cir. 1999) (holding that the Administrative Law Judge is not bound

9     by the DOT descriptions but can instead rely on the testimony of the vocational expert and own

10    findings specific to the individual plaintiff before the Administrative Law Judge); see also Tackett

11    v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999); Moncada v. Chater, 60 F.3d 521, 524 (9th Cir.

12    1995); Distasio v. Shalala, 47 F.3d 348, 350 (9th Cir. 1995); Barker v. Secretary of Health and

13    Human Svcs., 882 F.2d 1474, 1478 n.1 (9th Cir. 1989); Terry v. Sullivan, 903 F.2d 1273, 1277

14    (9th Cir. 1990).

15            At Step 5, the ALJ determined that there are other jobs which exist in the national

16    economy that Plaintiff can perform.  See CAR 974-75.  The ALJ stated as follows:

17            In determining whether a successful adjustment to other work can be
              made, I must consider the claimant's residual functional capacity, age,
18            education, and work experience in conjunction with the Medical-
              Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the
19            claimant can perform all or substantially all of the exertional demands at a
              given level of exertion, the medical-vocational rules direct a conclusion of
20            either "disabled" or "not disabled" depending upon the claimant's specific
              vocational profile (SSR 83-11). When the claimant cannot perform
21            substantially all of the exertional demands of work at a given level of
              exertion and/or has nonexertional limitations, the medical-vocational rules
22            are used as a framework for decisionmaking unless there is a rule that
              directs a conclusion of "disabled" without considering the additional
23            exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the
              claimant has solely nonexertional limitations, section 204.00 in the
24            Medical-Vocational Guidelines provides a framework for decisionmaking
              (SSR 85-15).
25
              If the claimant had the residual functional capacity to perform the full
26            range of light work, a finding of "not disabled" would be directed by
              Medical-Vocational Rule 202.21. However, the claimant's ability to
27            perform all or substantially all of the requirements of this level of work
              has been impeded by additional limitations. To determine the extent to
28            which these limitations erode the unskilled light occupational base, I asked

                                                    21

the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as routing clerk (DOT: 222.687-022, light. SVP 2), router (DOT: 222.587-038, light, SVP 2) and housekeeper (DOT: 323.687-014, light, SVP 2). Nationwide, there are 105,000 routing clerk positions, 35,000 router positions and 220,000 housekeeper positions available, respectively (Hearing Testimony).

Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

CAR 974-75.

Here, the Court finds that the ALJ followed the proper legal framework in making the determinations outlined above. Consistent with the applicable law, the ALJ did not apply the Grids because Plaintiff's exertional capabilities are eroded by other limitations. In lieu of applying the Grids, the ALJ appropriately obtained vocational expert testimony based on hypothetical questions describing Plaintiff's age, education, work experience, and residual functional capacity. As discussed above, the Court finds no error in the ALJ's determination of Plaintiff's residual capacity. The Court further finds that the hypothetical questions posed to the vocational expert were based on this residual functional capacity determination and, as such, are based on substantial evidence. The vocational expert's answers to the ALJ's hypothetical questions provide further evidence in support of the ALJ's vocational findings. Finally, the ALJ appropriately inquired as to any inconsistencies between the vocational expert's testimony and the DOT's definitions and concluded that none exist.

/ / /

/ / /

/ / /

/ / /

1
## IV. CONCLUSION

2      Based on the foregoing, the Court concludes that the Commissioner's final

3 decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY

4 ORDERED that:

5           1.      Plaintiff's motion for summary judgment, ECF No. 11, is denied.

6           2.      Defendant's motion for summary judgment, ECF No. 12, is granted.

7           3.      The Commissioner's final decision is affirmed.

8           4.      The Clerk of the Court is directed to enter judgment and close this file.

9

10 Dated:  March 18, 2025

11                                                      _____
                                                        DENNIS M. COTA
12                                                      UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23